UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA TRIGUEROS and AMBER TRIGUEROS,<br><br>               Plaintiffs,<br><br>v.<br><br>SOUTHWEST AIRLINES,<br><br>               Defendant. | Civil No. O5-CV-2256-L(AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [doc. #19]** |

Defendant Southwest Airlines ("Southwest" or "defendant") moves for summary judgment in the above-captioned case. The motion has been fully briefed. Having carefully considered the arguments of the parties and associated evidence, the Court enters the following decision.

**Factual and Procedural Background**

Plaintiffs Barbara Trigueros ("Barbara") and her daughter, Amber Trigueros ("Amber") (collectively "Trigueros" or "plaintiffs") boarded a Southwest Airlines ("defendant" or "Southwest") airplane bound for Oakland on July 25, 2003. (Complaint at ¶ 6) Both plaintiffs are African-Americans. A Caucasion male flight attendant, William Browne ("Browne"), offered to check Amber's carry-on bag as she entered the plane, but Amber declined the offer and stowed her bag under her seat. *Id.* at ¶ 7. A Caucasian man, who was seated across from

plaintiffs,[1] had a large briefcase that needed to be stowed. *Id.* at ¶ 8.  Browne did not suggest that the Caucasian male passenger's briefcase be checked but instead asked a Caucasian woman who was seated behind the male passenger if she would remove her bag so the briefcase could be stored under her seat.  She adamantly refused. *Id*. at ¶ 9.

Browne then told Amber that she would need to move her carry-on bag from underneath her seat so the briefcase could be stowed appropriately.  Amber refused. *Id.* at ¶ 10.  Although Browne asserted that the man with the briefcase was seated prior to plaintiffs, plaintiffs told Browne that they had been seated first.   *Id.* at ¶ 11.  Plaintiffs contend that Browne became agitated and left to get Southwest's Operations Supervisor, David Castro Spears ("Castro Spears"), an African American.[2]  Castro Spears asked plaintiffs to step off the plane with him, which they did.  On the jetway,[3] Castro Spears stated to plaintiffs that based on what Browne had told him, they were being uncooperative with flight attendant Browne. *Id.* at ¶ 13.

Plaintiffs returned to the plane and Amber spoke to a couple seated across from plaintiffs explaining what had happened. *Id.* at ¶ 15.  Upon hearing Amber's conversation, Browne again called Castro Spears who asked plaintiffs to step out of the plane. *Id.*  Plaintiffs exited the plane a second time with Castro Spears who "lectured", "humiliated" and "harassed" them and "told them to go back in the airplane and to 'shut up.'" *Id.* at ¶ 16.  As they returned to their seats this second time, the large briefcase had been stowed safely in an area between Barbara's seat and the wall of the plane. (Browne Declar.¶ 19)  Plaintiffs allege they were aware that other passengers were staring at them and making comments, which caused plaintiffs embarrassment and discomfort. (Complaint at ¶ 16)

After their return to the plane, the flight commenced with plaintiffs in their selected seats and with Amber's carry-on bag stowed under her seat.  During the flight, Browne did not ask

---

[1]  Plaintiffs were sitting in the front of the aircraft in rear-facing seats.

[2]  Plaintiffs allege Browne got his supervisor but David Castro Spears is not Browne's supervisor.  Rather, Castro Spears is Southwest's Operations Supervisor. *See* Browne deposition, ¶ 16.

[3]  Jetway is another term for the passenger boarding bridge.

plaintiffs if they would like something to drink until all the other passengers were served and the crew was collecting trash. *Id.* at ¶ 19.

Plaintiffs bring claims alleging race discrimination under the Unruh Civil Rights Act; violation of California Civil Code §2103; slander; intentional infliction of emotional distress; negligent infliction of emotional distress; and violation of Civil Code § 52.1.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party bears the burden of proof on an issue — whether on a claim for relief or an affirmative defense — the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 159-60 (1970); *Nissan Fire*, 210 F.3d at 1102-03.  When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256.  Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*, 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).  The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

## Discussion

**1.    Racial Discrimination under Unruh Civil Rights Act**

    **a.    Legal Standard**

California Civil Code § 51, known as The Unruh Civil Rights Act ("Unruh Act" or "the Act"), provides in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities,

privileges, or services in all business establishments of every kind whatsoever. CIV. CODE § 51(b). The purpose of the Unruh Act is "to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." *Curran v. Mount Diablo Council of Boy Scouts*, 147 Cal. App. 3d 712, 733 (1983); *see also Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 738 (1982). The Act must be construed liberally in order to carry out its purpose. *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 28 (1985). Further, the Unruh Act is intended "as an active measure that would create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." *Angelucci v. Century Supper Club*, 59 Cal. Rptr. 3d 142, 146 (2007)(citing *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 75-76 (1985). "The Act . . . imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination." *Id*. (citing *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 738 (1982). Moreover, the Unruh Act "serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices. *Id.* (citing *Isbister*, 40 Cal. 3d at 75). "The Act stands as a bulwark protecting each person's inherent right to 'full and equal' access to 'all business establishments.'" *Id.* (citing §51(b); *Isbister*, 40 Cal. 3d at 75). Although the Unruh Act prohibits arbitrary discrimination on the basis of race, it does not prohibit business from enacting "reasonable regulations that are rationally related to the services performed and facilities provided . . . as long as the policy is applied alike to all persons." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1502 (1999)(citing *Harris v. Capital Grouth Investors XIV*, 52 Cal. 3d 1142, 1155 (1991)).

The standard of proof required in Unruh Act cases is the same as that used in 42 U.S.C. § 1981[4] and 42 U.S.C. § 2000(a)[5] cases. *See Green v. Rancho Santa Margarita Mortgage Co.*, 28

---

[4] A claim brought under 42 U.S.C. § 1981 is based on racial discrimination in the making and enforcement of contracts.

[5] A claim under Title II of the Civil Rights Act of 1964, also known as a 42 U.S.C. § 2000(a) claim, is for discrimination in the denial of a public accommodation:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

Cal. App. 4th 686, 694-95 (1994). Thus, a summary judgment motion in an Unruh Act case is governed by the burden shifting provisions established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-88 (1989). Under the *McDonnell Douglas* test, plaintiffs have the initial burden of making a *prima facie* case of discrimination. *Patterson*, 491 U.S. at 186. Once plaintiffs have proven the elements of a *prima facie* case, the burden of production shifts to defendants to articulate a legitimate, nondiscriminatory reason for the challenged action. *See McDonnell Douglas*, 411 U.S. at 802-03. If the defendant articulates a proper basis for its conduct, the burden shifts back to plaintiffs in the third stage of the analysis to prove that defendant's proffered reasons were simply a pretext for discrimination. *Id.* at 804-05. Notwithstanding the shifting burden of production, plaintiffs retain the ultimate burden of proving that the challenged action was the result of intentional discrimination based on impermissible motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993) (refining the *McDonnell Douglas* test so that plaintiffs must retain the ultimate burden of proving actual discrimination by the defendant).

### b. *Prima facie* case

The requisite degree of proof necessary to establish a *prima facie* case of discrimination on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *see also Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) *; Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659-60 (9th Cir. 2002)(emphasizing the low threshold for a *prima facie* case and holding that even an employee's self-assessment is relevant evidence). A plaintiff needs only to offer evidence which "gives rise to an inference of unlawful discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1983); *see also Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)(holding that "[t]he amount of evidence that must be produced in order to create a *prima facie* case is very little").

---

accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

To establish a *prima facie* case[6], a plaintiff must demonstrate that she "(1) is a member of a protected class, (2) attempted to contract for services and afford [ ] herself of the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better." *Jackson v. Waffle House, Inc.*, 413 F. Supp.2d 1338, 1361 (N.D. Ga. 2006).

There is no dispute that, as African-Americans, plaintiffs are members of a protected class, meeting the first prong of the *prima facie* test.

Plaintiffs purchased tickets for their flight to Oakland from defendant. Plaintiffs have demonstrated through their deposition testimony that they were denied the full benefits or enjoyment of a public accommodation when they were singled out by being taken off the plane twice for admonishment for (1) refusing to move a stowed carry-on bag after a Caucasian woman was not removed from the plane when she strenuously refused to move her bag and (2) talking to fellow passengers about the incident.

Plaintiffs acknowledge there is a lack of direct evidence of racial animus insofar as defendant or its agents did not use racial slurs or act in an overtly racially discriminatory manner. But plaintiffs point to their deposition testimony concerning the woman who first refused Browne's request to move her carry-on luggage as evidence of a similarly situated Caucasian person who was treated differently and better than plaintiffs with regard to the allegedly discriminatory acts.

With all inferences made in the light most favorable to plaintiffs and the minimal showing necessary at the *prima facie* stage, the Court concludes that plaintiffs have presented sufficient circumstantial evidence to permit an inference of a discriminatory motive based on their allegations that defendant subjected them to treatment different from that accorded a similarly situated white passenger on their flight. Accordingly, plaintiffs have established a *prima facie* case of discrimination.

---

[6] The Court uses the *prima facie* standard for a claim arising under 42 U.S.C. § 2000a as it is the most closely analogous statute.

### c. Proffered legitimate, nondiscriminatory reason

Because plaintiffs have established a *prima facie* case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its alleged wrongful actions. *McDonnell Douglas*, 411 U.S. at 802.  To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence," reasons for its [ ] decision which, if believed by the trier of fact, would support a finding that the [ ] action was not a result of unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089 (1981).  Defendant's burden is one of production, not persuasion, thereby involving no credibility assessment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

In this case, defendant states, through the deposition testimony of its employees, that it was ensuring the safety of its employees and customers when plaintiffs were asked to leave the plane for discussions with its Customer Service Representative after Amber refused to move her carry-on bag from under her seat.  Defendant contends that the seat Amber occupied was uniquely appropriate for stowing the large briefcase that set the stage for the dispute.  (Browne declar. ¶¶ 5, 9, 10)   In his declaration, Browne states "[t]he space under seats 1D and 1E was *the only space designed to fit a larger bag.*"  *Id.* at ¶5 (emphasis added)  When Amber refused to move her carry-on bag so that a male passenger's large briefcase could be stowed under her seat, defendant contends that Barbara reacted in a "confrontational tone" that was out of proportion to the issue of where the briefcase would be stowed.  (Browne Declar. ¶ 14)  In his declaration, Castro Spears states that "[w]hen a flight attendant, prior to departure, is concerned about a passenger's willingness to follow crew instructions, it is Southwest Airlines' policy to have its crew members and operations supervisors deal with the situation on the ground, prior to takeoff, rather than during the flight." (Castro Spears Declar. ¶ 3)  Thus, defendant contends that the reason for its agents' action in removing plaintiffs from the plane twice was to "assess *prior to takeoff* whether Plaintiffs, who [Browne] perceived as confrontational and upset, would be willing and able to follow crew instructions during the flight."  (Reply memo. at 2; Castro Spears Declar. at ¶ 3).

Thus, defendant, through deposition testimony, provides a legitimate nondiscriminatory reason for its actions, namely that the actions Browne and Castro Spears took with respect to plaintiffs were based on defendant's safety policy.  The Court notes, however, defendant's written policy has not been provided by defendant to the Court.  Nevertheless, at this stage in the analysis, defendant's credibility is not at issue – defendant has the burden of production, not persuasion.  Defendant has made an adequate showing that its reason for the actions taken was legitimate and nondiscriminatory.

### d. Pretext for discrimination

If the defendant meets the burden of production by articulating a legitimate, nondiscriminatory reason for its actions, any presumption that the defendant discriminated "drops from the case," and the plaintiff must then show that the defendant's alleged reason for its action was merely a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 507-08.. A plaintiff can prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is not credible. *Noyse v. Kelly Services*, 488 F.3d 1163, 1170 (9th Cir. 2007)(emphasis added)(citing *Chuang v. Univ. of Cal. Davis, Bd of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000)(A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.")); *Burdine* 450 U.S. at 256.

Direct evidence is "evidence, which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221(9th Cir. 1998) (internal quotation marks omitted).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the [defendant]." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  Because direct evidence is extremely probative, plaintiff needs to offer very little direct evidence to raise a genuine issue of material fact; but, when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat defendant's motion for summary judgment.

As noted above, plaintiffs lack any direct evidence of racial animus – defendant or its agents are not alleged to have used racial slurs or to have acted in an overtly racially discriminatory manner.  Thus, plaintiffs are required to come forward with specific and substantial evidence of pretext.[7]  Here, as in *Noyse*, the "central dispute in this case is whether [plaintiffs'] evidence [is] sufficient to raise a triable issue of fact as to pretext."  *Noyse*, 488 F.3d at 1168.  "[T]he burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'" *Id.* at 1170 (quoting *Payne v. Northwest Corp.,* 113 F.3d 1079, 1080 (9th Cir. 1997).  Plaintiffs must only show that a rational trier of fact could, on all the evidence, find that the defendant's explanation was pretextual and therefore, its action was taken for impermissibly discriminatory reasons.  Because there is a lack of direct evidence showing discriminatory

---

[7] As defendant has appropriately noted, plaintiffs have presented no evidence with their opposition to the motion for summary judgment.  Instead, plaintiffs use bullet points in their memorandum in opposition to note the "material facts" for the court to consider.  The facts, as plaintiffs present them, reference Barbara's and Amber's depositions; however, the depositions are not attached as exhibits to plaintiffs' opposition.  The Court notes that a trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 772 (9th Cir. 2002); *see* FED. R.CIV.P. 56(e); *Beyene*, 854 F.2d at 1181.  Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *Id.* (Citations omitted); *see* Fed. R. Evid. 901(a). "We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F.3d at 773; *see also, Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir.1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir.1989); *Beyene*, 854 F.2d at 1182; *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir.1976).
As the *Orr* court discussed:
> In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [FED.R.CIV.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*, 831 F.2d at 925.  However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *See* FED.R.EVID. 901(b)(providing ten approaches to authentication); FED.R.EVID. 902 (self-authenticating documents need no extrinsic foundation).

*Id.* at 774 (internal citations omitted).
Further, Federal Rule of Civil Procedure 56(e) requires that affidavits be made on personal knowledge, that the affiant be competent to testify to the matters stated therein, and that sworn or certified copies of all papers referred to in an affidavit be attached thereto. *See* FED.R.CIV.P. 56(e).
Here, because Barbara's and Amber's depositions have been properly provided by defendant, the Court will consider plaintiffs' references to the record. *Barefield v. Bd of Trustees*, 2007 WL 2221051 *5 (E.D. Cal. 2007)("Once evidence has been authenticated by one party, it has been authenticated with regard to all parties." )

motive, plaintiffs must produce evidence to show that defendant's explanation for its actions is not credible. *Warren v. City of Calsbad*, 58 F.3d 439, 444 (9th Cir. 1995).

Although defendant's proffered reason for removing plaintiffs from the plane is legitimate and nondiscriminatory, plaintiffs contend that defendant's proffered reason is pretextual in that it is not worthy of credence.

First, defendant notes in its statement of undisputed facts:

> Shortly after Plaintiffs boarded, flight attendant Browne realized that the large briefcase belonging to the passenger in seat 2D still had to be stowed.  For this reason, and because the overhead bins were full, and *because the space beneath seats 1D and 1E was the only suitable space in the area*, flight attendant Browne indicated his intention to stow the briefcase underneath seats 1D and 1E where Plaintiffs were seated . . . . The extended space beneath seats 1D and 1E was *particularly suitable* for the briefcase, which was too large to fit properly under any single seat.

(Statement of uncontroverted facts ¶¶ 8, 10 (emphasis added), citing Browne Declar., ¶¶ 9, 10, 13)  But later in that same statement of undisputed facts, defendant notes that "[a]fter Plaintiffs returned to their seats the second time, "flight attendant Browne was able to stow the briefcase *in an open space between Barbara Trigueros' seat and the wall of the airplane.*"  (Statement of uncontroverted facts ¶ 36)  This open space was an apparently safe and appropriate stowage area.  With his admitted experience and knowledge of available and safe storage space on the aircraft (Browne Declar. at ¶ 1), Browne could have defused easily and quickly any alleged confrontation with plaintiffs if had he stowed the briefcase in the available alternative location when the Trigueros stated they would not move Amber's carry-on bag.  A rational trier of fact could well conclude that Browne's failure to use another convenient, safe and readily available stowage area and his unwillingness to allow plaintiffs to speak to other passengers caused the situation to escalate.  A rational trier of fact could also find that by escalating the situation and requiring plaintiffs to leave the plane twice in front of other passengers, Browne's actions were not based on defendant's policy but instead were racially motivated.   It should also be noted that Browne does not contend that plaintiffs' attempted conversation with fellow passengers was loud, disruptive, aggressive or otherwise suggestive of an inability to follow flight attendants' directions.

Further, as discussed above, although defendant contends that the actions Browne and Castro Spears took with respect to plaintiffs was based on defendant's policy, the Court notes that defendant's written policy has not been provided to the Court. In their declarations, Browne and Casto Spears provide their general interpretation of defendant's safety policy which may or may not accurately reflect defendant's written policy when confronted with the situation here. Defendant's written policy may be to avoid the escalation of tensions by taking alternative actions that either do not feature the embarrassing removal of a passenger from the airplane or otherwise singling out a passenger for admonishment for refusing to move a carry-on bag and/or for talking to fellow passengers.

Similarly, Barbara's deposition testimony that a Caucasian woman was permitted to assertively decline a request to move her under-seat stowed bag and was not taken off the plane for admonishment is undisputed in the admissible evidence presented. This is a material fact that a trier of fact must consider when determining whether defendant's actions were impermissibly discriminatory.

Plaintiffs have raised specific and probative evidence of pretext, *i.e.,* defendant's explanation is not credible because it is inadequately supported by evidence and is internally inconsistent. A reasonable trier of fact could conclude that defendant's demands to plaintiffs that Amber's carry-on bag be moved, to not discuss the incident with fellow passengers, and to exit the plane twice for admonishment based on Browne's discomfort were motivated by race rather than by any alleged confrontational exchange with Browne and/or defendant's safety policy. Accordingly, defendant's motion for summary judgment on this cause of action is denied.

**2.  Violation of California Civil Code §2103**

Plaintiffs have withdrawn their second cause of action for violation of California Civil Code § 2103. (Opp. at 10)

**3.  Slander**

Plaintiffs have withdrawn their third cause of action for slander. (Opp. at 10).

/ / /

**4.     Intentional infliction of emotional distress**

The elements of a cause of action for intentional infliction of emotional distress are: (1) extreme or outrageous conduct engaged in with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe emotional distress; and (3) causation. *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).  For conduct to be outrageous, it must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. Generally, conduct will be found to be actionable where the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App.4th 1023, 1028 (1995). But "the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Cochran v. Cochran,* 65 Cal. App.4th 488, 496 (1998).

Here, no reasonable juror could find that defendant's conduct was outrageous or extreme. Further, although plaintiffs provide their deposition testimony regarding their emotional injury occasioned by the incident at issue and it is understandable that plaintiffs would be upset because of the incident, plaintiffs have not provided evidence of *severe* emotional distress. Accordingly, defendant's motion for summary judgment on this claim is granted.

**5.     Negligent infliction of emotional distress**

With respect to plaintiff's fifth cause of action, "[n]egligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply. " *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 126 (2002).  "[T]here is no duty to avoid negligently causing emotional distress to another." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 984  (1993). "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id*. at  985.   Plaintiffs have not alleged that defendant assumed a duty in which the plaintiffs' emotional state was an object.  Thus, a plaintiff must show the existence of an independent duty, which may be imposed by law, assumed by the defendant, or be based on a special relationship

between the parties, *Potter*, 6 Cal.4th at 984-985.

Here, plaintiffs have not and cannot allege an independent duty imposed by law, assumed by defendant, or created by a special relationship between the parties that proximately caused plaintiffs' emotional distress. Accordingly, defendant is entitled to summary judgment on plaintiffs' negligent infliction of emotional distress claim.

### 6. Violation of Civil Code § 52.1

Plaintiffs also allege violation of the Bane Act, California Civil Code § 52.1. Civil Code section 52.1(a) provides:

> (a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. . . .

CIV. CODE §52.1(a).

Civil Code section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent: a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion. *Venegas v. County of Los Angeles*. 32 Cal. 4th 820, 841-843 (2004). The essence of a Bane Act claim is that the defendant, by the specified improper means, *i.e.*, "threats, intimidation or coercion", tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. *Jones*, 17 Cal. 4th at 334.

Defendant contends that there is no evidence that plaintiffs were threatened with violence and therefore, plaintiffs cannot state a claim or survive summary judgment. Defendant primarily relies on *Cabesuela v. Browning-Ferris Indus.*, 68 Cal. App. 4th 101 (1998) to support its argument. The *Cabesuela* court limited the scope of the Bane Act to violence, actual or threatened, by reading the Bane Act in conjunction with Civil Code section 51.7, which sets forth the "right to be free from any violence, or intimidation by threat of violence . . . ." CIV.

CODE § 51.7. But the California Supreme Court recently rejected the tying of section 52.1 with section 51.7. *See Venegas*, 32 Cal. 4th at 841-843.

"Violence" is not a word used in section 52.1(a). The statutory language is "threats, intimidation, or coercion," which the Legislature meant to have a broader coverage than that provided by section 51.7. *See id.* at 845-847. Although intimidation or coercion may be accomplished by violence and threats may be accompanied by violence or may promise violence, violence, or the threat of violence, is not a prerequisite to stating a cause of action based on the Bane Act. *Id.* Thus, defendant's argument that because *Cabesuela* is applicable and plaintiffs have not shown that they were threatened with violence, the Court must find that plaintiffs cannot state a claim or survive summary judgment on this claim is incorrect as a general proposition.

But the statute itself speaks of the threat of violence when the defendant's alleged wrongful action is based on speech alone:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the **speech itself threatens violence** against a specific person or group of persons; and the person or group of persons against whom the threat is directed **reasonably fears that, because of the speech, violence will be committed against them** or their property and that the person threatening violence has the apparent ability to carry out the threat.

CIV. CODE 52.1(j)(emphasis added). Thus, section 52.1(j) requires that violence in the form of some physical force must be threatened when the threat or intimidations is based on speech alone.

Here, Barbara's deposition testimony indicates that she felt Castro Spears was rude but not threatening:

> A.   And it was at this point that Castro began saying things like "Well, see, I don't even know what's going on, but I can make you guys not take this flight. I can make you stay here and take the next flight."
>
> . . .
>
> Q.   And what did Castro then say?
>
> A.   "Just get back on the plane and shut up." He repeated that. And we got back on the plane.
>
> Q.   Is there anything that Castro said to you when you were out on the jetway

|     |    |                                                                                                                                                                 |
| --- | -- | --------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| 1   |    | with him, that you haven't already told me?                                                                                                                     |
| 2   | A. | No. Not that I can think of right now.                                                                                                                          |
| 3   |    | . . .                                                                                                                                                           |
| 4   | Q. | Was Castro speaking to you in a raised voice in the jetway?                                                                                                     |
| 5   | A. | Yes, he was.                                                                                                                                                    |
| 6   | Q. | Was he shouting at you?                                                                                                                                         |
| 7   | A. | He wasn't shouting, but he did raise his voice. He adjusted his volume when I asked for his card though.                                                        |

(Barbara Trigueros Depo. at 57-58).

|      |    |                                                                                                                                                                               |
| ---- | -- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| 10   | Q. | At any time, did the flight attendant or Castro physically threaten you?                                                                                                      |
| 11   | A. | No.                                                                                                                                                                           |
| 12   | Q. | Did they ever put their hands on you?                                                                                                                                         |
| 13   | A. | No. I consider a verbal threat was made by Castro when he said, "I can make you catch the next plane if I want to," I consider that threatening. There was no cause for it.   |
| 15   | Q. | Did – did either the flight attendant or Castro ever put his hands on you or on Amber?                                                                                        |
| 16   | A. | No.                                                                                                                                                                           |

(Barbara Trigueros Depo. at 67).

Amber's deposition testimony also supports the fact that no threat of physical violence was made. The first time the Trigueros were asked to step out of the plane into the jet way, Amber testified that she explained what had happened with the flight attendant to Castro Spears.

|     |    |                                                                                         |
| --- | -- | --------------------------------------------------------------------------------------- |
| 22  | Q. | And when you explained this to Castro, what was his response, if any?                   |
| 23  | A. | His response was, "I don't care. I wasn't there. Just, you know, do what he says."      |
| 24  | Q. | What was – what was the tone in which Castro was speaking to you and your mother?       |
| 26  | A. | Nasty, rude, unprofessional.                                                            |

(Amber Triguero Depo. at 37-38).

The second time the Trigueros were asked to step out of the plane into the jetway, Amber

testified:

| | | |
|---|---|---|
| A. | | Anyway, so we're outside. He says, "You know, you're still talking." At that point we didn't say anything. And then he says, "Yeah, you know, you need to get back on the airplane, and you need to shut up." |

    A.    Anyway, so we're outside. He says, "You know, you're still talking." At that point we didn't say anything. And then he says, "Yeah, you know, you need to get back on the airplane, and you need to shut up."

          And we're just like wow, okay. My mom said, "You know, how would you feel if your wife and your daughter were treated this way on an airplane?"

          And he said, "You know what? If I want to, I can kick you off this plane right now and make you catch a later one. I can make you catch whatever one I want to let you catch later on today. I can make you get your stuff and get off."

          And I think at that point, I think we were just like, wow, seriously, this is – this is happening right now. I can't really tell you how it ended from – from that moment I think we were both really shocked just, like, to think we're paying for this type of treatment.

    . . .

    Q.    Is – is there anything that you can remember Castro saying to you during that second time out on the jetway, that you haven't already told me?

    A.    Oh, my mom asked for a card. . . .

          And, you know, that's all I can remember. But that was pretty much the gist of it. She asked him for a card, at which point he gave her a card, and she got Will's name.

    . . .

    A.    I – I remember saying, "This is ridiculous. This is ridiculous." I mean, I think I was more in a thoughtful place just because how does somebody else get to say no, but then I can't say no. And it's an issue, and I get hustled and requested and told to go some – to go outside the plane, not once, but twice.

          I just was trying to, you know, understand why it was happening at that point and why he was being so rude to us. I mean, what did we do to be told, "Well, if I want to, I can make you get off this plane and get another one later," you know. Just –

    Q.    When you were in the jetway this – this second time, did – did Castro raise, speak in a raised tone of voice to you?

    A.    Yes.

    Q.    Was he shouting?

    A.    He was loud, yes. I mean, he wasn't whispering, "I can make you get off." No. He was saying that in – in voluminous tones.

17

05cv2256

(Amber Triguero Depo. at 44-47).

Neither Barbara nor Amber manifest any sense of fear for their safety or anticipate some form of physical violence but rather, both express surprise at Castro Spear's alleged rudeness and unprofessional behavior. Even reading the deposition testimony broadly, as a matter of law, there was no threat of violence made against plaintiffs.

Accordingly, plaintiffs have not raised a genuine issue of material fact concerning whether defendant's actions, in this case, speech alone, show threats, intimidation, or coercion, as those terms are commonly understood, that interfered with plaintiff's constitutional rights because there was no threat of violence. Accordingly, defendant's motion for summary judgment on plaintiffs' Bane Act claim is granted.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** granting in part and denying in part defendant's motion for summary judgment [doc. #19]: the motion is denied as to plaintiffs' Uhruh claim but granted as to all other causes of action. **IT IS FURTHER ORDERED** that the parties shall **jointly** contact Magistrate Judge Battaglia's chambers, within five days of the filing of this Order, to obtain a mandatory settlement conference date. **IT IS FURTHER ORDERED** setting September 24, 2007 at 11:00 a.m. for the Final Pretrial Conference. **IT IS FURTHER ORDERED** that the parties shall jointly file a proposed pretrial order on or before September 17, 2007.

**IT IS SO ORDERED.**

DATED: August 29, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL